FILED
U.S. DISTRICT COURT
DIV.

2013 DEC -3 P 4: 06

CLERK _____
SO. DIST. OF GA.

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

UNITED STATES OF AMERICA,  :

 :

v.   :   CASE NO.: CR213-026

 :

TIMOTHY JOHN ARNOLD   :

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Timothy Arnold ("Arnold") has been charged with: theft and conversion of Government property, in violation of 18 U.S.C. § 641; the unlicensed manufacture of and dealing in firearms, in violation of 18 U.S.C. § 922(a)(1)(A); interstate travel to engage in the unlicensed manufacture of and dealing in firearms, in violation of 18 U.S.C. § 924(n); and interstate transport of illegally acquired firearms, in violation of 18 U.S.C. § 922(a)(3). Arnold filed a Motion to Suppress Statements. The Government filed a Response. The undersigned conducted an evidentiary hearing on this matter on November 7, 2013, at which Special Agent Henry Countryman ("Countryman") with the Bureau of Alcohol, Tobacco, Firearms and Explosives and Special Agent Wendell Palmer ("Palmer") with the Air Force Office of Special Investigations testified.

## STATEMENT OF THE FACTS

The credible evidence at the evidentiary hearing establishes the following:

Palmer interviewed Arnold on March 3, 2011, in the office of the Deputy Director for the Air Force Office of Special Investigations ("AFOSI") in Townhouse 395 at the

Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. Arnold arrived at the townhouse on his own accord. Palmer advised Arnold at the beginning why he was interviewing Arnold. Palmer also advised Arnold that he was not under arrest or detention and was free to leave at any time. Arnold agreed to speak to Palmer. Arnold did not indicate that he wished to terminate the interview, and he gave appropriate responses to questions and did not seem to be under the influence of any substance. Arnold left the townhouse on his own at the end of the interview.

Palmer interviewed Arnold again on March 6, 2011, at the townhouse. Arnold arrived at the townhouse on his own and was told he was not under arrest or detention. Arnold appeared to understand the questions he was asked and the situation itself, was responsive to the questions, and was not under the influence of any substance. Arnold left the office in which the interview was conducted once but returned to the office to continue the interview. This interview was recorded, and Arnold made a written statement. At the conclusion of the interview, Arnold left the townhouse on his own.

Palmer interviewed Arnold once again on March 22, 2011, at the same townhouse. Arnold arrived voluntarily. Palmer informed Arnold of the nature of the interview, that he was not under arrest or detention, and that any statements he wished to make were voluntary. Arnold did not ask to terminate the interview at any time. Once again, at the conclusion of this interview, Arnold left on his own accord.

Countryman arranged to meet Arnold at the AFOSI building (Townhouse 395) at FLETC. Countryman interviewed Arnold on May 3, 2011. Arnold came to the townhouse on his own accord. Countryman advised Arnold that he was investigating the illegal selling of firearms to other people, that Arnold was not under arrest, that he

2

was free to go at any time, and that Arnold did not have to speak with Countryman if he did not want to do so. Arnold appeared to understand what Countryman said to him, was responsive, and did not express a desire to leave at any time during the one (1) hour interview.

Arnold, through counsel, moves to suppress any and all statements he made during these interviews.

## DISCUSSION AND CITATION TO AUTHORITY

### I.    Whether Arnold's statements are subject to suppression

"No person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend. V. "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." [1]    Miranda v. Arizona, 384 U.S. 436, 444 (1966). Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id.    The circumstances of each case dictate "whether there is a restraint on the suspect's freedom of movement 'of the degree associated with a formal arrest.'"    United States v. Phillips, 812 F.2d 1355, 1360 (11th Cir. 1987) (quoting Minnesota v. Murphy, 465 U.S. 420, 430 (1984)). An objective, reasonable person test has been adopted "in cases involving custody issues." Id. at 1359. In applying this test, "the only relevant inquiry is how a reasonable [person] in the suspect's position would

---

[1] "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 U.S. at 444.

3

have understood [the] situation." Id. at 1360. In other words, the inquiry is whether "a reasonable [person] in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that 'degree associated with a formal arrest' to such extent that he would not feel free to leave" the scene. Id. (quoting Murphy, 465 U.S. at 430).

The evidence before the Court reveals that Arnold voluntarily arrived at Townhouse 395 on each of the four (4) occasions he was interviewed and that he left Townhouse 395 on his own accord on these occasions after the interviews were concluded. The evidence also reveals that Arnold was told at the outset of each of these interviews that he was not under arrest or any other type of detention, he could leave at any time, and his participation in the interview was voluntary. (Gov't's Exh. 3, p. 4; Gov't's Exh. 4, p. 4; Gov't's Exh. 5, p. 4; Gov't's Exh. 6, p. 1). There is no evidence before the Court that Arnold was under the influence of drugs or alcohol at any time during these four (4) interviews. In short, the evidence before the Court reveals Arnold was not in custody or under arrest on any occasion he spoke with Palmer or Countryman; accordingly, it was not necessary for Palmer or Countryman to have advised him of his Miranda rights before these interviews. The statements Arnold made during these interviews are not subject to suppression on this basis.

## II. Whether Arnold's statements were made voluntarily

The United States Supreme Court's holding in Jackson v. Denno, 378 U.S. 368 (1964), governs the voluntariness of confessions, and in pertinent part provides:

> It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the

4

confession, and even though there is ample evidence aside from the confession to support the conviction.

378 U.S. at 376 (internal citation omitted). A confession is not "voluntary" pursuant to the Due Process Clause when law enforcement officials have used coercive conduct. Colorado v. Connelly, 479 U.S. 157, 167 (1986). Coercion can be mental or physical. Blackburn v. Alabama, 361 U.S. 199, 206 (1960); Chambers v. Florida, 309 U.S. 227, 237 (1940). The test for determining if a confession is the result of coercion requires a review of the "totality of the circumstances." Blackburn, 361 U.S. at 206 (citing Fikes v. Alabama, 352 U.S. 191, 197 (1957)). "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." United States v. Thompson, 422 F.3d 1285, 1295–96 (11th Cir. 2005). Government coercion is a necessary predicate to a finding of involuntariness under the Fifth Amendment. However, "[a]bsent police conduct causally related to the confession, there is no basis for concluding that any state actor has deprived a criminal defendant of due process of law." Id. at 1296.

The totality of the circumstances reveals that any and all statements Arnold made to Palmer and Countryman were made voluntarily and were in no way obtained by means of mental or physical coercion. Arnold presented nothing during the evidentiary hearing which would suggest otherwise. In fact, when Arnold's counsel inquired of Palmer in this regard, Palmer testified that he did not assure Arnold or intimate in any way that, if Arnold spoke with him and was truthful, Arnold would have "played ball" and could keep his job. Arnold's statements during the four (4) interviews are not subject to suppression, as these statements were given voluntarily.

5

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Arnold's Motion to Suppress Statements (doc. 26) be **DENIED**. The Government should be entitled to use Arnold's statements as evidence during the course of the trial in this case.

**SO REPORTED** and **RECOMMENDED**, this _3rd_ day of December, 2013.

_____
JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)