IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2013 DEC -3 P 4: 06
CLERK_____
SO. DIST. OF GA.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CASE NO.: CR213-026 |
| | : | |
| TIMOTHY JOHN ARNOLD | : | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Timothy Arnold ("Arnold") has been charged with: theft and conversion of Government property, in violation of 18 U.S.C. § 641; the unlicensed manufacture of and dealing in firearms, in violation of 18 U.S.C. § 922(a)(1)(A); interstate travel to engage in the unlicensed manufacture of and dealing in firearms, in violation of 18 U.S.C. § 924(n); and interstate transport of illegally acquired firearms, in violation of 18 U.S.C. § 922(a)(3). Arnold filed a Motion to Suppress Evidence. The Government filed a Response. The undersigned conducted an evidentiary hearing on this matter on November 7, 2013, at which Special Agent Henry Countryman with the Bureau of Alcohol, Tobacco, Firearms and Explosives and Special Agent Wendell Palmer with the Air Force Office of Special Investigations testified.

## STATEMENT OF THE FACTS

The credible evidence at the evidentiary hearing establishes the following:

Agent Palmer asked Arnold if he could search his house for any illegal badges he may have had in his possession, and the first search of Arnold's house occurred on

March 3, 2011. Arnold filled out a consent to search form and assisted Palmer in the search for badges and badge cases. During this search, Palmer noticed other items in Arnold's house which may have been Government property, including a scope. Arnold voluntarily gave Palmer the scope because he said it was the property of the Air Force Office of Special Investigations ("AFOSI"). Arnold told Palmer that he could come back on another occasion to retrieve other items identified as Government property.

Arnold also gave written consent for Palmer, Agent Countryman, and two (2) Special Agents from Moody Air Force Base to search his house on March 9, 2011. Arnold led these agents through his house and the outbuildings. Arnold gave property to the agents which he identified as belonging to the Government. Palmer testified that the agents did not take any items Arnold identified as being his, even though Palmer suspected there were other items in the house which were Government property. The agents recovered enough items from Arnold's house and outbuildings to fill up the bed of a pickup truck and a portion of Agent Countryman's car.

Palmer testified that he did not obtain a search warrant on either occasion because Arnold had given his consent for agents to search his house. Palmer also testified that he did not believe that Arnold believed he was coerced in any way to give consent on either occasion.

Arnold asserts that agents conducted warrantless searches of his home, which is a place in which he has a reasonable expectation of privacy. Arnold seeks the suppression of all evidence agents recovered during these searches.

AO 72A
(Rev. 8/82)

## DISCUSSION AND CITATION TO AUTHORITY

"The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.. However, an exception to the general rule against a warrantless search is a search made pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Consent must be freely given, and the totality of the circumstances determines whether the consent was knowingly and voluntarily given. United States v. Ramirez-Chilel, 289 F.3d 744, 752-53 (11th Cir. 2002). "The government bears the burden of proving both the existence of consent and that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily." United States v. Williams, 199 F. App'x 828, 832 (11th Cir. 2006). Factors relevant to the determination of voluntariness are: "the presence of coercive police procedure[;]" "the extent and level of [the suspect's] cooperation with police;" "his awareness of the right to refuse to consent to the search;" "his education and intelligence;" "his belief that no incriminating evidence will be found[;]" United States v. Molina-Garcia, 353 F. App'x 277, 278 (11th Cir. 2009), and "the voluntariness of the defendant's custodial status[.]" United States v. Holmes, 270 F. App'x 767, 768 (11th Cir. 2008) (citing United States v. Chemaly, 741 F.2d 1346, 1352 (11th Cir. 1984)).

The evidence before the Court reveals that Arnold was advised of his right to consent or to refuse to consent to a search. Arnold was also advised that, if he consented to a search, any items found during the course of this search could be used

AO 72A
(Rev. 8/82)

as evidence against him in a criminal trial or another proceeding. Arnold was further advised that, if he did not consent to a search, no search could be conducted without a warrant. Arnold agreed to these conditions, as indicated by his initialing of the beginning and ending of this paragraph on the Consent for Search and Seizure form dated March 3, 2011. (Gov't's Exh. 1, p. 2). Arnold also initialed the beginning and ending of the following paragraph:

> Before deciding to give my consent, I carefully considered this matter. I am giving my consent voluntarily and of my own free will, without having been subjected to any coercion, unlawful influence[,] or unlawful inducement and without any promise of reward, benefit, or immunity having been made to me. . . . I have read and understand this entire acknowledgement of my rights and grant my consent for search and seizure.

(Id.). On the dates of both searches, Arnold signed the consent forms. (Id.; Gov't's Exh. 2, p. 2).

There is no dispute that Arnold gave agents consent to search his house on March 3 and March 9, 2011. There is also no dispute that Arnold's consent to the searches was given freely and voluntarily; this is particularly true in light of Palmer's testimony that Arnold told Palmer after the first search that he could come back on another day to gather other items which were identified as being Government property. Though there was no evidence elicited during the evidentiary hearing on this matter, the undersigned presumes that Arnold possesses at least average intelligence to have obtained the employment position he held on the dates of these searches. Additionally, Arnold appeared to assist counsel during the course of the evidentiary hearing. Further, Arnold had been very cooperative with AFOSI's investigation, including providing statements on several occasions. As noted above, Arnold was made aware of his right

to refuse to give consent on both occasions. Finally, there is no evidence whatsoever that agents coerced or threatened Arnold in any way at any time—either before or after he gave his consent for the searches. Evidence relating to the items seized during the course of the two (2) searches of Arnold's house is not subject to suppression.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Arnold's Motion to Suppress Evidence (doc. 27) be **DENIED**. The Government should be entitled to use evidence recovered during the March 3 and 9, 2011, searches of Arnold's house during the course of the criminal proceedings against Arnold.

**SO REPORTED** and **RECOMMENDED**, this 3rd day of December, 2013.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)