# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

UNITED STATES OF AMERICA

vs.

CR 213-26

TIMOTHY JOHN ARNOLD

**ORDER**

Defendant Timothy Arnold has filed a Motion to Dismiss Due to Statute of Limitations. Dkt. Nos. 34, 48. After an independent and <u>de novo</u> review, the undersigned concurs with the Magistrate Judge's Report and Recommendation, to which Defendant has objected. Dkt. Nos. 57, 79. The basis for Defendant's objection is that the alleged conduct occurred outside the statute of limitations, and the crimes do not constitute continuing offenses—regardless of whether they were shadowed by an overarching scheme.[1] See Dkt. No. 79, at 1-3.

## I. Discussion

As discussed below, only one of the charged counts is a continuing offense, but the statutes of limitation for Counts 1

---

[1] Defendant does not challenge whether Counts 6 through 9 have been appropriately brought within the statute of limitations. See Dkt. Nos. 34, 48. His challenge pertains to only Counts 1 through 5. See id.

through 3 have been suspended under 18 U.S.C. § 3287. Moreover, the Indictment's allegations of violations within the five-year limitations period would make dismissal premature.

A. Continuing Offenses

1. Count 1: Conversion Under 18 U.S.C. § 641

Count 1 of the Indictment alleges that Defendant converted more than $1,000 worth of United States property from January 2006 through November 2010. Dkt. No. 1, at 6. This offense, proscribed under 18 U.S.C. § 641, has a five-year statute of limitations. United States v. Trang Huydoan Phan, 754 F. Supp. 2d 186, 188 (D. Mass. 2010). Normally, such a period begins to run when each element of the crime has occurred and the crime is complete. Toussie v. United States, 397 U.S. 112, 115 (1970) (quoting Pendergast v. United States, 317 U.S. 412, 418 (1943)). However, an offense is continuing if the substantive offense statute's language compels such a treatment, or if the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one. Id.

As to conversion under 18 U.S.C. § 641, courts are split on whether the underlying conduct may constitute a continuing offense. See Jeffrey R. Boles, Easing the Tension Between Statutes of Limitations and the Continuing Offense Doctrine, 7 Nw. J.L. & Soc. Pol'y 219, 239-43 (2012) (explaining the initial rejection of the doctrine's application to embezzlement and

2

later split among federal courts). Some have found that embezzlement or conversion under § 641 may constitute a continuing offense in certain circumstances. E.g., United States v. Smith, 373 F.3d 561, 567-68 (4th Cir. 2004) (per curiam); United States v. George, No. CR11-213Z, 2011 WL 4559122, at *2 (W.D. Wash. Sept. 29, 2011); Trang Huydoan Phan, 754 F. Supp. 2d at 190; United States v. Thompkins, No. 1:08CR65, 2008 WL 3200629, at *2 (W.D.N.C. Aug. 5, 2008); United States v. Gibson, No. 08-03057-01-CR-S-DGK, 2008 WL 4838226, at *3 (W.D. Mo. Nov. 6, 2008); United States v. Street, No. 3:07CR181TSL-JCS, 2008 WL 4372737, at *3 (S.D. Miss. Sept. 19, 2008).

Others have rejected such treatment, regardless of the underlying indictment's language. E.g., United States v. Yashar, 166 F.3d 873, 876-880 (7th Cir. 1999) (rejecting treatment of a similar embezzlement offense under 18 U.S.C. § 666 as a continuing offense); United States v. Silkowski, 32 F.3d 682, 689-90 (2d Cir. 1994); United States v. Crary, No. CR 13-35-M-DLC, 2013 WL 6054607, at *3 (D. Mont. Nov. 15, 2013); United States v. Tackett, Crim. No. 11-15-ART, 2011 WL 4005347, at *4-6 (E.D. Ky. Sept. 8, 2011); United States v. Young, 694 F. Supp. 2d 25, 29 (D. Me. 2010); United States v. Sunia, 643 F. Supp. 2d 51, 75 (D.D.C. 2009); United States v. Pease, No. CR-07-757-PHX-DGC, 2008 WL 808683, at *3 (D. Ariz. Mar. 24, 2008);

AO 72A
(Rev. 8/82)

United States v. Aubrey, 53 F. Supp. 2d 1355, 1355-56 (E.D. Tex. 1999); United States v. Beard, 713 F. Supp. 285, 290-91 (S.D. Ind. 1989).

As to Eleventh Circuit caselaw, nothing resolves whether embezzlement under § 641 is a continuing offense. Instead, the Eleventh Circuit's application of the continuing-offense doctrine has been limited to classic manifestations of continuing offenses, such as conspiracy. See, e.g., United States v. Cruz, 805 F.2d 1464, 1477 (11th Cir. 1986) (applying the doctrine to a conspiracy to address an evidentiary matter); United States v. Adams, 1 F.3d 1566, 1581-82 (11th Cir. 1993) (same); United States v. Coia, 719 F.2d 1120, 1124-25 (11th Cir. 1983) (applying the doctrine to a conspiracy to address a statute-of-limitations defense); United States v. Gonzalez, 921 F.2d 1530, 1547-48 (11th Cir. 1991) (same); United States v. Harriston, 329 F.3d 779, 783 (11th Cir. 2003) (per curiam) (same). Indeed, the Eleventh Circuit has noted the exceptional nature of the doctrine. See Cruz, 805 F.2d at 1477 n.15 ("Unlike the continuing offense of conspiracy, most crimes occur during a brief period of time."); United States v. Hassoun, No. 04-60001-CR, 2007 WL 4180844, at *7 (S.D. Fla. Nov. 20, 2007) (stating that the ordinary rule for the doctrine of continuing offenses is that it "should be applied in limited circumstances"). And, the Eleventh Circuit has invoked the rule

4

of lenity and rejected the doctrine's application where Congress intended to treat each execution of a crime as separate. United States v. Kramer, 73 F.3d 1067, 1072-73 n.11 (11th Cir. 1996) (reasoning that ambiguous criminal statutes should be construed in favor of the accused in concluding that "money laundering is not a continuing offense"); see also United States v. De La Mata, 266 F.3d 1275, 1289-90 (11th Cir. 2001) (declining to treat bank fraud as a continuing offense because each actionable execution is a discrete violation); Hassoun, 2007 WL 4180844, at *7-8 (treating the offense of providing material support to terrorists as a discrete offense).

After careful consideration, the Court declines to treat Count 1 as a continuing offense for the purpose of Defendant's statute-of-limitations defense. Continuing offenses are "offenses which are not complete upon the first illegal act, but instead continue to be perpetrated over time." United States v. Gilbert, 136 F.3d 1451, 1453 (11th Cir. 1998). As to the period for the statute of limitations, the offense's last act controls the commencement of the period. Id. at 1453 n.4. Because of this effect on the limitations period, courts are admonished to construe offenses as continuous in narrow circumstances. See De La Mata, 266 F.3d at 1288-89. "[O]ffenses should not be considered continuing unless the explicit language of the statute compels such a conclusion, or the nature of the crime

AO 72A
(Rev. 8/82)

involved is such that Congress must assuredly have intended that it be treated as a continuing offense." Id. at 1289 (quoting Toussie, 397 U.S. at 114-15) (alterations and internal quotation marks omitted). Where the statute anticipates a violation can occur multiple times in a scheme, the scheme itself should not be treated as a continuing offense, but rather the Court should treat each manifestation of the scheme as a discrete violation. See id. at 1289-90; United States v. Diaz, No. 07-20398-CR, 2008 WL 686961, at *6 (S.D. Fla. Mar. 12, 2008) (using De La Mata's treatment of bank fraud to analyze whether health care fraud is a continuing offense). "When doubt exists about the statute of limitations in a criminal case, the limitations period should be construed in favor of the defendant." Gilbert, 136 F.3d at 1454 (citing United States v. Habig, 390 U.S. 222, 226-27 (1968)).

Neither the crime's nature nor § 641's language support treating embezzlement as a continuing offense. The relevant statutory language imposes liability on:

> [w]hoever embezzles, steals, purloins, or knowingly converts to his use or the use of another . . . any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof . . . .

18 U.S.C. § 641. This language clearly does not meet the first part of Toussie's two-prong test. Compare 18 U.S.C. § 3284

(stating explicitly that a debtor's concealment of assets is a continuing offense) with 18 U.S.C. § 641 (making no explicit statement about whether the underlying crimes are continuing or discrete). As to the second part, nothing about the nature of embezzlement compels a conclusion that the harm is continuing. The government must prove beyond a reasonable doubt:

> (1) that the money or property described in the indictment belonged to the United States or an agency thereof and had a value in excess of [$1,000] at the time alleged; (2) that the property lawfully came into the possession or care of the defendant, and the defendant fraudulently appropriated the money or property to his own use or the use of others; and (3) that the defendant did so knowingly and willfully with the intent either temporarily or permanently to deprive the owner of the use of the money or property so taken.

United States v. Burton, 871 F.2d 1566, 1570 (11th Cir. 1989) (per curiam). The language suggests that a violation occurs each time that the defendant appropriates certain property with bad intent; the offense does not speak to what comes thereafter. Indeed, in other cases, the Government has charged multiple counts of embezzlement arising from a common scheme—implicitly countenancing the violations as discrete offenses. See, e.g., United States v. Sullivan, 28 F. Supp. 2d 1365, 1368 (S.D. Fla. 1998) (discussing the proper grouping of various counts, including five counts of embezzlement). Therefore, the Court

7

does not treat embezzlement under § 641 as a continuing offense to which the limitations period is extended.

2. Count 2: Retaining Property Under 18 U.S.C. § 641

In contrast to Count 1, Count 2 involves a continuing offense. Count 2 alleges that Defendant "did knowingly and willfully receive and retain, with the intent to convert to his own use or gain," United States property worth over $1,000. Dkt. No. 1, at 6. The relevant statutory language imposes liability on:

> [w]hoever receives, conceals, or retains [United States property] with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted . . . .

18 U.S.C. § 641. As with Count 1, the statute does not explicitly deem retention of United States property to be a continuing offense. Nevertheless, from the offense's possessory nature, the Court concludes that "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." Toussie, 397 U.S. at 115.

The statute distinguishes between those who receive, conceal, or retain government property. 18 U.S.C. § 641. To "receive" is "to come into possession," and therefore could be treated as a discrete violation. Definition Receive, Merriam-Webster Dictionary, available at www.merriam-webster.com/dictionary/receive. As charged in the Indictment,

however, to "retain" an item requires ongoing conduct. To "retain" is "to continue to have or use (something)." Definition Retain, Merriam-Webster Dictionary, available at www.merriam-webster.com/dictionary/retain. Retention constitutes similar—if not the same—conduct as for an offense of possession, a crime traditionally treated as continuing. See, e.g., United States v. D'Angelo, 819 F.2d 1062, 1065-66 (11th Cir. 1987) (reasoning that showing circumstances around receipt of a firearm is not necessary to prove a possession offense). Indeed, the only appellate case addressing the issue concluded that "Congress must have assuredly intended for [concealment and retention of stolen property] to be a continuing [offense]." United States v. Blizzard, 27 F.3d 100, 103 (4th Cir. 1994); see also United States v. Maddox, Crim. No. 11-0148-WS, 2011 WL 2731869, at *1 (S.D. Ala. July 14, 2011) (stating that only one appellate court has addressed the issue). District courts have likewise come to the same conclusion. See, e.g., United States v. Tackett, Crim. No. 11-15-ART, 2011 WL 4005347, at *5 (E.D. Ky. Sept. 8, 2011) (declining to treat embezzlement as a continuing offense while noting that "Congress must have intended retention to be treated as a continuing offense"); United States v. Rivlin, No. 07CR.524(SHS), 2007 WL 4276712, at *4 (S.D.N.Y. Dec. 5, 2007) (distinguishing § 641 as a continuing offense because it involves the retention of funds); United

9

States v. Gibson, No. 08-03057-01-CR-S-DGK, 2008 WL 4838226, at *3 (W.D. Mo. Nov. 6, 2008) (concluding that retention of funds is a continuing offense); United States v. Cunningham, 902 F. Supp. 166, 168-69 (N.D. Ill. 1995) (using § 641 to reason that possession of stolen mail may be a continuing offense). Therefore, the offense of retaining United States property as alleged in Count 2 may properly be treated as a continuing offense. Even if it was not a continuing offense, the Court would still conclude that dismissal is unwarranted, as discussed below.

3. Count 3: Disposing Under 18 U.S.C. § 641

For reasons similar to treating embezzlement as a discrete offense,[2] the Court holds that Count 3, as alleged in the Indictment, constitutes a discrete offense. Count 3 alleges that Defendant unlawfully sold, conveyed, and disposed of United States property worth over $1,000 under 18 U.S.C. § 641. Dkt. No. 1, at 7. The relevant statutory language imposes liability on:

> [w]hoever . . . without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof . . . .[3]

---

[2] See supra Part I.A.1.
[3] Although § 641's first paragraph contemplates two distinct types of actions—taking versus disposing—courts have sometimes treated the selling-conveying-or-disposing part of the statute the same as the embezzling-stealing-

AO 72A
(Rev. 8/82)

18 U.S.C. § 641. As with embezzlement, the statutory language does not explicitly deem selling government property a continuing offense, nor does the nature of the offense suggest that the harm continues. What happens subsequent to disposal need not be shown to establish a violation. Therefore, for limitations purposes, the Court treats Count 3 as a discrete offense.

### 4. Counts 4 and 5: Manufacturing and Dealing Firearms Without a License

Count 4 alleges that Defendant engaged in a business of manufacturing firearms without a license, and Count 5 alleges that Defendant unlawfully dealt firearms—all in violation of 18 U.S.C. §§ 922(a)(1)(A)[4] and 923.[5] Dkt. No. 1, at 7-8. Both counts allege that the offenses took place "[f]rom in and before June 2008 through in or about March of 2011." Id.

---

purloining-or-converting part. See, e.g., United States v. Morris, 284 F. App'x 762, 763 (11th Cir. 2008) (per curiam) (reviewing whether there was sufficient proof of the statute's elements); United States v. Baker, 693 F.2d 183, 185-86 (D.C. Cir. 1982) (quoting both parts of the statute's first paragraph in concluding that the government need not show that the defendant knew that the property at issue was United States property); Theft of Government Money or Property 18 U.S.C. § 641 (First Paragraph), Pattern Jury Instructions: Eleventh Circuit, Criminal Cases with Annotations & Comments § 21 (2010). In the case at bar, however, the Government is apparently prosecuting Defendant for two distinct violations, each implicating a different part of the statute.

[4] "It shall be unlawful . . . for any person . . . except a licensed . . . manufacturer . . . or licensed dealer, to engage in the business of . . . manufacturing . . . or dealing in firearms . . . ." 18 U.S.C. § 922(a)(1)(A).

[5] "No person shall engage in the business of . . . manufacturing . . . or dealing in firearms, . . . or manufacturing ammunition, until he has filed an application with and received a license to do so from the Attorney General." 18 U.S.C. § 923(a).

Apparently, the Government concedes that the default five-year limitations period applies to these offenses. See Dkt. No. 38, at 28-29 (noting that the statute of limitations for Counts 4 and 5 would prevent prosecution of any charges before June 10, 2008). It notes that Counts 4 and 5's date allegations "bracket the five year limitations period of 18 U.S.C. § 3282," and that Defendant is not subject "to criminal liability for acts beyond the statute." Id. at 29. In turn, neither the Magistrate Judge's Report and Recommendation nor Defendant's objection to it specifically address Counts 4 and 5. See Dkt. Nos. 57, 79. Likewise, the Court has found no authority for applying anything but the normal five-year limitations period to Defendant's charges in Counts 4 and 5.[6]

B. Tolling Due to Authorization of Military Force

The Government contends that the statutes of limitation for Counts 1 through 3 are tolled pursuant to 18 U.S.C. § 3287 under the Wartime Suspension of Limitations Act (WSLA), which suspends the limitations period for certain offenses against the United States while the country is at war or Congress has enacted a specific authorization for use of military force. Dkt. No. 38, at 29-33. The WSLA applies to various offenses, including those "committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property

---

[6] See infra Part I.C.

of the United States." 18 U.S.C. § 3287. Clearly, Counts 1 through 3 would qualify, as they involve the acquisition, control, or disposition of United States personal property. But, the timing of tolling presents a more difficult issue.

By its terms, the amended version of 18 U.S.C. § 3287, enacted in 2008, suspends the statute of limitations for an offense when the country is at war or there is congressional authorization for use of military force—but, only "until 5 years after the termination of hostilities as proclaimed by a Presidential proclamation, with notice to Congress, or by a concurrent resolution of Congress." Therefore, there are two distinct timing issues: (A) if and when suspension was triggered and (B) if and when hostilities have terminated.

1. Triggering of Suspension

As to the triggering issue, courts have diverged on whether the pre-amendment WSLA was ever triggered by the congressional authorizations for force in 2001 and 2002. Authorization for Use of Military Force Against Iraq Resolution of 2002, Pub. L. No. 107-243, 116 Stat. 1498 (2002); Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (2001). The post-amendment WSLA clearly contemplates these authorizations as triggering suspension. See 18 U.S.C. § 3287 (suspending limitations period for applicable offenses when "Congress has enacted a specific authorization for the use of the Armed

Forces"). However, some courts have found that the pre-amendment version, despite its exclusive focus on whether the country was "at war," was also triggered by the authorizations. For example, in United States v. Prosperi, the court developed a four-factor inquiry into whether the United States was "at war" for the purposes of § 3287 and, using that standard, concluded that the 2001 and 2002 authorizations triggered the statute. 573 F. Supp. 2d 436, 449-54 (2008); see also United States ex rel. Carter v. Halliburton Co., 710 F.3d 171, 178-79 (4th Cir. 2013) (rejecting a formal approach to what triggers tolling under the pre-amendment statute); United States v. BNP Paribas SA, 884 F. Supp. 2d 589, 607 (S.D. Tex. 2012) (adopting Prosperi's reasoning to conclude that the authorizations put the country "at war"). In contrast, other courts have adopted a formal approach, concluding that the authorizations were not tantamount to congressional declarations of war under Article I of the Constitution. E.g., United States v. Latimer, No. CR-11-384-R, 2012 WL 1023569, at *3 n.5 (W.D. Okla. Mar. 27, 2012); United States v. W. Titanium, Inc., Crim. No. 08-CR-4229-JLS, 2010 WL 2650224, at *3-4 (S.D. Cal. July 1, 2010).

In the case at bar, the Court need not decide whether the authorizations triggered the pre-amendment WSLA. The "application of a statute of limitations extended before the original limitations period has expired does not violate the Ex

14

Post Facto Clause." United States v. Grimes, 142 F.3d 1342, 1351 (11th Cir. 1998). Thus:

> as to the counts [alleged in an indictment] for which the limitations period had expired prior to the effective date of the WSLA amendment, there is no suspension of the limitations period pursuant to the WSLA. However, as to the counts for which the limitations period would have lapsed after the WSLA amendment, the limitations period has been suspended pursuant to the WSLA, as there has been an authorization of military force, though no formal declaration of war.

United States of America v. Anghaie, No. 1:09-CR-37-SPM/AK, 2011 WL 720044, at *2 (N.D. Fla. Feb. 21, 2011); see also United States v. Wells Fargo Bank, N.A., No. 12Civ.7527(JMF), 2013 WL 5312564, at *11 (S.D.N.Y. Sept. 24, 2013) ("[T]he 2008 WSLA amendment . . . applies to any claims for which the statute of limitations had not yet run at the time of its passage."); BNP Paribas SA, 884 F. Supp. 2d at 608 (holding that a False Claim Act (FCA) offense could be brought because its six-year statute of limitations did not expire prior to the 2008 amendment, despite the offense occurring before the amendment). The WSLA in its current form was originally enacted on September 30, 2008.[7] Consolidated Security, Disaster Assistance, and Continuing Appropriations Act, Pub. L. No. 110-329, § 8117, 122

---

[7] Some courts identify October 14, 2008, as the date in which the statute's scope was expanded. See, e.g., Anghaie, 2011 WL 720044, at *2 ("On October 14, 2008, the Act was amended to expand its operation . . . ."). However, the bill on which that date is based contains no mention of § 3287. See Duncan Hunter National Defense Authorization Act for Fiscal Year 2009, Pub. L. No. 110-417, 122 Stat. 4356 (2008).

15

Stat. 3574 (2008). Therefore, if the five-year limitations period applies, any qualifying offense that occurred after September 30, 2003, is properly brought within the statute of limitations, which was suspended as of September 30, 2008. This encompasses all offenses alleged in the case at bar. See Dkt. No. 38, at 32 ("As the period October 2003 to present encompasses [Defendant's] entire tenure at the Federal Law Enforcement Training Center, any criminal conduct charged in this indictment of the type described in § 3287 would be within the limitations period, as all of that conduct arises out of Arnold's employment at FLETC, as is alleged in the introductory paragraphs, incorporated into each count."). But see Dkt. No. 1, at 6-7 (alleging that Counts 2 and 3 occurred "[b]efore March 22, 2011"). Unless there has been a termination of hostilities (as discussed below), the alleged timing of Counts I through 3 falls squarely within the period in which offenses are tolled by the 2008 amendment.

2. Termination of Hostilities

The foregoing discussion could be affected by the statute's condition that suspension of the limitations period ends "5 years after the termination of hostilities as proclaimed by a Presidential proclamation, with notice to Congress, or by a

concurrent resolution of Congress."[8] 18 U.S.C. § 3287. If there has been a termination of hostilities, the Court must scrutinize the temporal order of when the WSLA was triggered, when hostilities were terminated, when violations are alleged to have occurred, and when charges were ultimately brought.

After great consideration, the Court holds that there has been neither a presidential proclamation of the termination of hostilities in Afghanistan, nor a concurrent resolution of Congress. This is the majority approach. See Halliburton Co., 710 F.3d at 179-80 (concluding that the WSLA applies to any qualifying crimes since the beginning of hostilities because hostilities have not terminated under the statute's language); United States v. Pfluger, 685 F.3d 481, 485 (5th Cir. 2012) (concluding that offenses occurring as late as May 2004 were properly charged because there had been no formal declaration of an end of hostilities); Wells Fargo Bank, N.A., 2013 WL 5312564, at *11 (tolling the limitations period for FCA offenses "for which the statute of limitations had not yet run at the time of [the WSLA's] passage"); United States ex rel. Paulos v. Stryker Corp., No. 11-0041-CV-W-ODS, 2013 WL 2666346, at *15 (W.D. Mo. June 12, 2013) (finding that the limitations period for FCA offenses is tolled if occurring since the authorization of force

---

[8] The pre-amendment version suspends the limitations period "until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress." 18 U.S.C. § 3287 (2007).

in September 2001); United States v. Loman, No. CR-12-265-M, 2013 WL 1855876, at *1 (W.D. Okla. May 1, 2013) (holding that an FCA action's six-year limitations period had not expired prior to the 2008 amendment); BNP Paribas SA, 884 F. Supp. 2d at 607-08 (holding in the alternative that the statute of limitations was extended before the original limitations period expired); Latimer, 2012 WL 1023569, at *3 (tolling the statute of limitations for offenses as of October 14, 2008); Anghaie, 2011 WL 720044, at *2 (implicitly determining that there has been no termination in holding that certain counts have been tolled).

The minority approach, adopted by only two district courts, is that there was a termination of hostilities in Afghanistan on December 22, 2001, when "the United States formally recognized and extended full diplomatic relations to the new government of Hamid Karzai," and in Iraq on May 1, 2003, when "President Bush, while aboard the USS Abraham Lincoln, proclaimed" an end to major combat operations. Prosperi, 573 F. Supp. 2d at 455; see also United States v. Pearson, No. 2:09CR43-KS-MTP, 2010 WL 3120038, at *1-2 (S.D. Miss. Aug. 4, 2010) (adopting Prosperi's reasoning). This approach proves problematic. For example, it liberally interprets the termination clause despite the WSLA's unambiguous language mandating that formal requirements be met, as recognized in United States v. Grainger, 346 U.S. 235 (1953). See Pfluger, 685 F.3d at 485. Further, its analysis of the

18

termination of hostilities in Afghanistan overlooks the 2001 authorization bill's use of broad language, which was "clearly intended by Congress to entail more than the Afghan state." Paul D. Swanson, Note, Limitless Limitations: How War Overwhelms Criminal Statutes of Limitations, 97 Cornell L. Rev. 1557, 1582 (2012). And, it ignores a central premise of Justice O'Connor's opinion in Hamdi v. Rumsfeld that "[a]ctive combat operations against Taliban fighters apparently are ongoing in Afghanistan." 542 U.S. 507, 521 (2004); see also Swanson, at 1577 (describing Prosperi's holding as "absurd" and "run[ning] against precedent"). Indeed, rather than wind down after the supposed dates of the termination of hostilities, the conflicts escalated. See Swanson, at 1582 (citing the financial and human costs of the conflicts since 2003).

In light of these observations regarding Prosperi's analysis and the voluminous authority holding that there has been no termination of hostilities pursuant to § 3287—at least in Afghanistan—the Court adopts the majority approach. As a result, the Court's analysis in Part I.B.1 applies, and Defendant's statute-of-limitations challenge fails.

C. Merits of Dismissal

Even assuming Counts 1 through 3 involved discrete offenses unaffected by the WSLA, dismissal would not be the proper remedy at this stage. Where conduct has been charged in a single

19

AO 72A
(Rev. 8/82)

count, "the defendant may be convicted of the offense if any of the alleged acts occurred within five years of the indictment, even if prosecution for the others would be barred by the statute of limitations." United States v. Gray, Crim. No. 11-13, 2012 WL 1554649, at *3 (W.D. Pa. May 1, 2012). At trial, assuming that the statute of limitations could serve as a valid defense, the temporal scope of violations in Counts 1 through 5 of the Indictment suggests that the Government could still present violations occurring within the five-year limitations period. Therefore, Defendant's motion to dismiss is without merit.

## II. Conclusion

For the aforementioned reasons, Defendant's objection is without merit and **OVERRULED**. Dkt. No. 79. The Magistrate Judge's Report and Recommendation is adopted as the opinion of the Court. Dkt. No. 57. Defendant's Motion to Dismiss Due to Statute of Limitations is **DENIED**. Dkt. Nos. 34, 48.

**SO ORDERED**, this 7TH day of January, 2014.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA